* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
1. An employee-employer relationship existed between plaintiff and defendant-employer at all times relevant to this proceeding.
2. On January 13, 1999, Sun Health Group was the carrier on the risk.
3. Due to the insolvency of the carrier, the North Carolina Insurance Guaranty has become the Statutory Insurer for the purposes of this proceeding.
4. The parties were subject to and bound by the North Carolina Workers' Compensation Act at all times relevant to this proceeding.
5. Plaintiff's average weekly wage at the time of the injury, as determined by a Form 22, was $367.29 per week.
6. At the hearing, the parties stipulated into the record Forms 18, 19, and 33, as well as the original hospital incident report dated January 13, 1999.
 * * * * * * * * * * *
Based upon the competent evidence of record the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was 44 years old at the time of the hearing before the Deputy Commissioner. Plaintiff earned a high school diploma, has taken LPN courses, and is a certified EKG technician and certified nursing assistant (CNA). Additionally, she is a certified ward secretary in mental health through St. Luke's Hospital.
2. Plaintiff began working with St. Luke's Hospital in October 1996 as a full-time CNA in the Geri Psych Unit. Her job duties included cleaning, bathing, feeding, moving, and transporting patients.
3. On or about January 13, 1999, as plaintiff was checking on patients, she encountered an aggressive patient who ran over her left big toe with a wheelchair, bouncing up and down on the toe several times. Plaintiff filled out an incident report, stating that she sustained injury when a "patient ran over foot backing out of bathroom." According to the incident report, as well as plaintiff's testimony, medical treatment at that time was not necessary and plaintiff returned to work without losing any time.
4. Plaintiff testified that after the incident her left big toe was sore and bruised, but did not seem broken. Eventually the area around the nail bed of the left big toe became red. She said that, as time went on, mucus began coming out of the toenail and that the pain in the toe caused her to walk with a limp.
5. Per St. Luke's Hospital's accident reporting policy, if an employee needs additional treatment for a work-related injury, the employee should report to the Employee Health Nurse, Ms. Ruth Cantrell, who would then set up an appointment for the employee with the appropriate physician.
6. Plaintiff testified that in May 1999 she went to Ms. Cantrell, and then to the Workers' Compensation Coordinator, Ms. Betty Fenner, complaining of her left big toe problems and they made an appointment for her to see Dr. Rogers. To the contrary, Ms. Fenner and Ms. Cantrell testified that plaintiff did not seek authorization from anyone at the hospital to treat with Dr. Rogers in May 1999.
7. Plaintiff first sought treatment for her left big toe when she presented to Dr. Rogers on May 24, 1999. In contrast to plaintiff's testimony, Dr. Rogers documented a history where plaintiff reported having "a stretcher land on her great toe in January 1999, at work." Dr. Rogers diagnosed onychomycosis (fungal infection) of the left big toe, and determined that the toenail would need to be removed. Ms. Cantrell encountered plaintiff while escorting another employee-patient to Dr. Rogers' office that day. Ms. Cantrell asked plaintiff what she was doing there, and plaintiff advised that she would have to have her toenail removed. Ms. Cantrell had no recollection of plaintiff mentioning that it was related to a work injury.
8. On May 28, 1999, Dr. Rogers removed plaintiff's left toenail plate and prescribed Sporanox, an anti-fungal agent, to be used in intervals for three months.
9. Ms. Fenner testified that she was unaware that plaintiff had sought treatment for her left big toe with Dr. Rogers until she began receiving bills from Dr. Rogers' office for treatment occurring in May 1999. After receiving plaintiff's medical bills from May 1999, Ms. Fenner completed a Form 19 on June 2, 1999 and submitted it to the workers' compensation carrier along with Dr. Rogers' medical bills.
10. On June 23, 1999, plaintiff followed up with Dr. Rogers who documented: "This patient is having no further pain in her toe. There is no erythema. There is still evidence of the fungus infection, but she is on Sporanox, and as her nail grows out, this should resolve." At that time, there was no indication of any other medical problem involving plaintiff's left big toe.
11. Ms. Fenner received a bill for the June 23, 1999 visit and submitted it to the carrier. Dr. Rogers' 1999 medical bills are the only bills associated with plaintiff's left big toe treatment that Ms. Fenner received and submitted to the carrier. Ms. Fenner testified that she was not aware of how Dr. Rogers' bills were paid, and assumed they were paid by the carrier after she mailed them. She also did not know how plaintiff's medical bills incurred subsequent to 1999 were paid.
12. Although plaintiff testified at the hearing that Ms. Fenner and Ms. Cantrell assured her that her toe condition was covered through workers' compensation, Ms. Fenner expressly denied that any such assurances were made to plaintiff. Per her testimony, Ms. Fenner never represents to employees that their injuries will be covered by workers' compensation, and instead she routinely replies, "I'll mail it in to our workers comp [carrier] and they handle the claims." She explained that she does this because she does not know how the carrier will investigate and resolve the matter.
13. Ms. Cantrell was not aware that plaintiff suffered ongoing problems with her left big toe following the May 1999 toenail removal until plaintiff came back to ask for her accident report in July 2003.
14. After plaintiff's June 23, 1999 follow-up visit with Dr. Rogers, plaintiff did not seek additional treatment for the left big toe until October 2001.
15. Plaintiff presented to St. Luke's Hospital for treatment of her left foot on July 25, 2001. Those records indicate plaintiff had been experiencing pain and redness in the left foot with a burning sensation upon weight bearing for the past two days. Plaintiff's x-rays were normal, and she was diagnosed with possible overuse. Plaintiff did not mention or complain of any pain or symptoms in the left big toe throughout the course of the examination of her left foot, and no findings regarding problems with the left big toe were documented from the exam.
16. After that consultation regarding her left foot pain, plaintiff did not seek medical treatment again until October 25, 2001, when she went to the emergency room at St. Luke's Hospital, with complaints of problems with the left big toe. She was seen in follow-up by Dr. Rogers. On October 30, 2001, Dr. Rogers performed a surgical procedure called a Syms amputation whereby he removed the entire nail bed and sewed the skin up over where the nail used to be.
17. Around that time, plaintiff approached Ms. Fenner for the first time since 1999 regarding the new left big toe problems. Ms. Fenner reported the matter to the carrier at the time, and was told that plaintiff's claim would be denied, since it was more than two years since the last medical treatment. Ms. Fenner then informed plaintiff that the claim was denied. Ms. Fenner expressly denied telling plaintiff her new left big toe problems would be covered through workers' compensation.
18. Plaintiff continued seeking medical treatment regarding her left big toe with Dr. Rogers through June 2003, including an amputation of her left big toe through the IP joint in May 2003. Although plaintiff continued mentioning her course of treatment to Ms. Fenner, Ms. Fenner never told plaintiff her medical bills would be covered through workers' compensation. Ms. Fenner did not know whether any of plaintiff's medical bills had ever been paid by the carrier and did not know how any of her bills had been covered since that time.
19. Although plaintiff testified it was her impression that all of her medical bills related to her left big toe would be taken care of by workers' compensation, she admitted that she had health insurance through the hospital and was not sure who was actually paying the bills.
20. Plaintiff began treating with Dr. John Davis on February 23, 2004 for progressively worse lower back and left leg pain. On February 27, 2004, Dr. Davis performed a discectomy at L4-5 of plaintiff's spine. Dr. Davis also recommended plaintiff be seen by her family physician for symptoms of depression. Dr. Davis continued to treat plaintiff regarding her back until September 2004 at which time no further appointments were made due to lack of insurance. During his deposition, Dr. Davis testified to a reasonable degree of medical certainty that plaintiff's altered gait due to the left big toe partial amputation could have contributed to and exacerbated her back symptoms.
21. Having considered all of the evidence in the record, the undersigned finds that plaintiff's testimony that she was assured her medical bills were paid through the workers' compensation carrier or that she need not take further action to preserve a workers' compensation claim in connection with her January 13, 1999 toe injury is not credible. The credible evidence of record establishes that no one promised plaintiff that her medical bills would be paid by the workers' compensation carrier.
22. There is no evidence in the record establishing that any of plaintiff's medical bills were paid by the workers' compensation carrier or defendants as part of a workers' compensation claim.
23. Plaintiff filed a Form 18 in this matter on December 31, 2003. She filed a Form 33 requesting a hearing on February 4, 2004.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission lacks jurisdiction to hear this claim because plaintiff did not file her claim within the applicable time limit prescribed by N.C. Gen. Stat. § 97-24. An employee's right to compensation shall forever be barred unless a claim is filed with the Commission within two years after the alleged date of injury or the last payment of medical compensation. The timely filing of a claim is a condition precedent to the right to receive compensation. McCrater v.Stone Webster Eng'g Corp., 248 N.C. 707, 104 S.E.2d 858 (1958). Accordingly, N.C. Gen. Stat. § 97-24 is not a statute of limitations, but a statute of repose. Unlike an ordinary statute of limitations, a statute of repose defines substantive rights to bring an action.Colony Hill Condominium Association v. Colony Company A,70 N.C. App. 390, 394, 320 S.E.2d 273, 276 (1984). Failure to timely file is a jurisdictional bar for the Industrial Commission. Reinhardt v. Women'sPavilion, Inc., 102 N.C. App. 83, 401 S.E.2d 138 (1991).
2. There is no credible evidence that defendants should be estopped from raising the jurisdictional bar of N.C. Gen. Stat. § 97-24.
3. Since there is no credible evidence establishing that any of plaintiff's medical bills were paid by defendants, the tolling of the two-year time limit imposed by N.C. Gen. Stat. § 97-24 necessarily must be calculated from the date of injury pursuant to N.C. Gen. Stat. §97-24(a), which in this case is January 13, 1999. Since plaintiff's claim was not filed within two years of the date of injury, her claim is barred pursuant to N.C. Gen. Stat. § 97-24.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Because plaintiff's claim is barred by N.C. Gen. Stat. § 97-24, under the law, plaintiff's claim must be and is hereby DISMISSED based on lack of jurisdiction.
2. Each side shall pay their own costs, except that defendants shall pay the expert witness fees previously approved for Dr. Rogers and Dr. Davis.
This the ___ day of December 2006.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG COMMISSIONER